IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARGARET N.,[1]

                    Plaintiff,                                 Civ. No. 3:19-cv-713-MC

        v.                                           OPINION AND ORDER

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

MCSHANE, Judge:

Plaintiff brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). On January 22, 2013, Plaintiff filed an application for benefits, ultimately alleging disability as of May 31, 2011. Tr. 569.[2] After the administrative law judge (ALJ) determined Plaintiff was not disabled under the Social Security Act, Plaintiff appealed to the district court. The district court remanded for the ALJ to consider certain evidence regarding the need for Plaintiff to elevate her feet. Tr. 651-670. On remand, the ALJ conducted a second hearing, taking additional evidence from Plaintiff and Steven S. Goldstein, M.D., an impartial medical expert who is board-certified in internal medicine and neurology. The ALJ again

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

determined Plaintiff was not disabled at any time from May 31, 2011 through August 27, 2015.[3] Tr. 582.

Plaintiff argues the ALJ erred in weighing the medical opinions, in finding her less-than fully credible, in rejecting third-party evidence from her husband, and in failing to consider the effects of Plaintiff's migraines and sleep apnea. As the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of

---

[3] On a subsequent application, Plaintiff was found disabled as of August 28, 2015.

proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: obesity; chronic venous insufficiency; hearing loss; arthritis and degenerative disc disease of the spine; and diabetes. Tr. 572. The ALJ concluded Plaintiff had the RFC to perform light work with the following relevant limitations: she could stand and walk for four to five hours each workday; and she could sit for five to six hours each workday. Tr. 573.

## 1. **The ALJ's Weighing of Conflicting Medical Opinions**

In the opinion remanding this matter, the district court noted:

> Accordingly, the Court concludes that the ALJ erred by failing to provide any discussion of Dr. Earhart's foot elevation limitation. Although the record is somewhat mixed on the specific ongoing requirements in terms of frequency and duration of plaintiff's need to elevate her feet, the general limitation is prevalent throughout the record, and the ALJ must provide adequate reasons to either accept or reject such probative evidence.[4]

Tr. 662.

The district court concluded that "the record requires additional development regarding the prescribed limitations related to plaintiff's [chronic venous insufficiency] condition;

---

[4] The district court concluded the ALJ provided specific and legitimate reasons for rejecting Dr. Earhart's other exertional limitations. Tr. 663-64.

specifically, the record is equivocal about the frequency and duration that she is required to elevate her feet, if at all." Tr. 669. On remand, the ALJ took testimony from Dr. Goldstein, an impartial medical expert who is board-certified in internal medicine and neurology. Plaintiff argues the ALJ erred in giving great weight to the opinion of Dr. Goldstein and little weight to the opinion Dr. Earhart, Plaintiff's treating physician.

When faced with conflicting medical evidence, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. . . ." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). One such specific and legitimate reason to reject a treating doctor's opinion is if there is an incongruity between it and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, a treating doctor's opinion is entitled to more weight than an examining doctor's opinion, which in turn is entitled to more weight than a reviewing doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

As noted, on remand the district court directed the ALJ to provide reasons for rejecting or accepting the "somewhat mixed" evidence regarding the need for Plaintiff to elevate her feet throughout the day. Tr. 662. The ALJ noted Dr. Goldstein testified that the record showed "minimal if any edema in the leg" and that although a June 2011 Doppler study "showed mild insufficiency in both legs . . . another study performed the same day did not." Tr. 576. The ALJ acknowledged Dr. Goldstein's interpretation of Dr. Marshall's examination "noted trace edema in the bilateral ankles, which he said is a rather minor finding." Tr. 576. The ALJ concluded:

> The record therefore documents some findings related to venous insufficiency that
> supports some functional limitations, which are accounted for in the residual

functional capacity assessment set forth above; however, *it also shows that the claimant's condition improved with treatment and does not contain persistent objective findings that would support the extent of the limitations alleged by the claimant*.

Tr. 576[5] (emphasis added).

Although Plaintiff argues another interpretation–i.e., that she had to elevate her legs throughout the day–is reasonable, the ALJ's finding that Plaintiff's condition improved to the extent that she could perform light work with certain restrictions is supported by the record. The ALJ pointed to numerous objective findings after mid-2011 documenting trace edema. Regarding Dr. Earhart's opinion that Plaintiff should elevate her legs for 30 to 45 minutes every two hours, the ALJ gave greater weight to Dr. Goldstein's opinion, concluding:

> When asked about Dr. Earhart's instructions to the claimant regarding the need to raise the legs above the heart level for at least 30 minutes every two hours, Dr. Goldstein testified that such instructions might be appropriate for someone with severe venous insufficiency, but that other treatments would include compression stockings and topical cream, as noted in the instructions. He said that for mild venous insufficiency, one would not elevate the legs to such a degree, and noted that the instructions are for the disease in general, from minor to severe, and are not individualized to any one patient. He agreed that Dr. Earhart provided the claimant with an individualized instruction, but said that he disagreed with the instruction, because when he looked at the record, *he did not see the presence of significant vascular disease*. The undersigned finds Dr. Goldstein's testimony to be well supported and consistent with the record. The claimant was instructed to elevate her legs for two days prior to the alleged onset date of disability, *and subsequently reported improvement with leg elevation and compression stockings, later reporting significant improvement with occupational therapy and stockings. The record does not contain consistent objective findings that would support a need for continued elevations or for the extent of elevation assessed by Dr. Earhart, whose records infrequently note only mild edema*.

Tr. 579 (emphasis added) (internal citation omitted).

---

[5] The ALJ pointed to other evidence indicating that by September 2011, Plaintiff's venous insufficiency had responded to treatment. *See* Tr. 575 (noting "subsequent records document improvement in the claimant's condition" and that following occupational therapy, Plaintiff reported "her legs were 'much improved'" and that in October 2011 Plaintiff's nurse practitioner stated Plaintiff's edema was "much improved" and recommended Plaintiff "keep wearing support hose and continue walking.").

The ALJ gave greater weight to Dr. Goldstein's opinion that the severity of Plaintiff's venous insufficiency indicated compression stockings rather than frequent elevation of her feet was appropriate. This finding is supported by the record. In response to the ALJ's questioning of Plaintiff's need to elevate her legs, Dr. Goldstein testified that various treatments were available. "You can use compressions stockings because this way it can–it's compression of the legs, and keeps the fluid from leaking out, so you don't get swelling if you're using a compression stocking." Tr. 600. Again, Dr. Goldstein indicated that the objective findings indicated Plaintiff had a "mild" case of venous insufficiency. Tr. 600-601. Dr. Goldstein pointed to Dr. Marshall's objective findings of "trace edema one plus at the bilateral ankles . . . . So there was a little bit of edema present in the ankles. I mean, this is pretty minor." Tr. 601.

The ALJ was tasked with resolving the conflicting opinions of Dr. Earhart and Dr. Goldstein with respect to (1) the severity of Plaintiff's venous insufficiency and (2) the appropriate limitations. As noted, the ALJ pointed to numerous objective findings of minimal edema. The conclusion that Plaintiff's condition was not severe enough to warrant frequent elevation of her feet is supported by the record.

Additionally, the ALJ was not tasked simply with choosing between two conflicting medical opinions. The ALJ gave some weight to Dr. Marshall's opinion "because it is generally consistent with the modest findings she noted on examination[.]" Tr. 580. Dr. Marshall examined Plaintiff in June 2013. Tr. 466-70. Dr. Marshall noted Plaintiff's diagnosis, two years earlier, of venous insufficiency. Tr. 466. Dr. Marshall noted that although Plaintiff initially treated the condition with elevation of her feet, she currently wore compression stockings and experienced leg swelling "when she stands or walks for long periods[.]" Tr. 466. Dr. Marshall noted Plaintiff

"endorses being unable to walk for greater than two blocks without resting because she experiences leg pain." Tr. 466.

On examination, Dr. Marshall noted Plaintiff "is easily able to transfer from the chair to the examination table. She sits comfortably and is able to take her shoes off without difficulty. She is able to walk to examination room without difficulty." Tr. 467. As noted by Dr. Goldstein, Dr. Marshall's examination of Plaintiff's extremities identified "Trace edema +1 at the bilateral ankles." Tr. 468. Plaintiff was able to "do tandem gain, heel-toe, hopping and squatting[.]" Tr. 468. Dr. Marshall opined Plaintiff had no lifting or carrying limitations, no sitting restrictions, and could stand and walk for up to six hours each workday. Tr. 470. The ALJ gave some weight to Dr. Marshall's opinion "because it is generally consistent with the modest findings" upon examination. Tr. 580. That said, the ALJ noted Dr. Marshall did not capture the full extent of Plaintiff's impairments and Plaintiff's RFC was somewhat more restrictive than that opined by Dr. Marshall. Tr. 580.

The ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Earhart's opinion that Plaintiff needed to elevate her legs at least 30 minutes every two hours. *See Chaudhry*, 688 F.3d at 671. The ALJ reasonably weighed the conflicting medical opinions and gave greater weight to the opinions of the independent medical examiner, the examining physician, and the reviewing doctors. In the ALJ's view, those opinions were more consistent with the record-as-a-whole. Although Plaintiff argues another interpretation of the record is reasonable—i.e., that Dr. Earhart's opinion demonstrate she is disabled—that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the

reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick*, 157 F.3d at 720-21)).

2. **The ALJ's Credibility Determination**

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a range of factors in assessing credibility[.]" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

The ALJ pointed to several of the above factors in finding Plaintiff less-than fully credible as to the extent of her limitations. For example, the ALJ noted that although in mid-2011 Plaintiff experienced increased symptoms from venous insufficiency, the record indicated that this condition improved with treatment. *See* Tr. 579 (noting although Plaintiff was instructed to elevate her legs in mid-2011, she "subsequently reported improvement with leg elevation and compression stockings, later reporting significant improvement with occupational therapy and stockings."); Tr. 576 (noting the record "shows that the claimant's condition improved with treatment and does not contain persistent objective findings that would support the extent of the limitations alleged by the claimant."); Tr. 575 (noting records in late 2011 indicated "her legs were 'much improved'" and she was able to walk more and was ordered to keep wearing

compression stockings and to continue walking). These findings are supported by substantial evidence in the record.

The ALJ also noted the minimal findings from Dr. Marshall's examination in June 2013. *See* Tr. 577 (noting the "modest objective findings" were not consistent with Plaintiff's alleged limitations). At that examination, Plaintiff stated "she needs help sometimes with showers and getting dressed because of her back problems, she is unable to bend or stoop effectively." Tr. 467. As noted, upon examination, Dr. Marshall observed that Plaintiff easily transferred from the chair to the examination table and "She sits comfortably and is able to take her shoes off without difficulty." Tr. 467. Plaintiff was able to hop and squat appropriately. Tr. 468. The ALJ's determination that the objective findings contrasted with Plaintiff's alleged limitations is supported by substantial evidence in the record.

The ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations.[6] *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez*, 740 F.3d at 523 ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick*, 157 F.3d at 720-21)). Because the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff less-than credible regarding the extent of her limitations, the ALJ

---

[6] Importantly, the ALJ did not conclude Plaintiff had no limitations. Instead, the ALJ acknowledged Plaintiff was limited to light work with additional restrictions. The ALJ merely rejected Plaintiff's more severe alleged limitations (such as the allegation that Plaintiff regularly elevates her feet for perhaps two hours each workday).

did not err in giving little weight to Plaintiff's testimony regarding those limitations.[7] *Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen*, 80 F.3d at 1282).

## **CONCLUSION**

The ALJ's decision is free of legal error and supported by substantial evidence. The

Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 16th day of July, 2020.

_____ /s/ Michael J. McShane_____
Michael McShane
United States District Judge

---

[7] Plaintiff's husband provided a third-party function reports that largely mirrored Plaintiff's own allegations regarding her limitations. Because the ALJ's reasons for rejecting Plaintiff's testimony apply equally to the testimony of the third-party reports, the ALJ did not err in giving little weight to the opinion of Plaintiff's husband. *Molina*, 674 F.3d at 1122. Additionally, Plaintiff's argument that the ALJ erred in failing to consider her migraines or sleep apnea at step two is meritless. It is not unreasonably for the ALJ to determine these were not severe impairments when, despite being represented by counsel, Plaintiff did not argue her migraines or sleep apnea constituted severe impairments in earlier briefings before the district court. Additionally, no doctor offered an opinion that Plaintiff's sleep apnea or migraines limited Plaintiff's ability to work. Finally, the only symptoms from these impairments came from Plaintiff's self-reports which, as described above, the ALJ determined were less-than fully credible.